IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| FERNANDO RIOS-MADRIGAL,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | **MEMORANDUM DECISION<br>AND ORDER**<br><br>Case No. 2:08-cv-257 CW<br>*Related to Case No.*: 2:05-cr-691<br><br>Judge Clark Waddoups |

## INTRODUCTION

On March 8, 2006, a jury found Fernando Rios-Madrigal ("Rios") guilty of possessing methamphetamine with the intent to distribute. Rios has filed a *pro se* motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255. Rios asserts his conviction should be set aside because he had ineffective assistance of counsel. Because Rios has failed to show that he is entitled to the requested relief, his motion is denied.

## FACTUAL BACKGROUND

On September 13, 2005, Cesar Blanca-Leon ("Blanca") called Carolina Morton ("Morton") and informed her that he could get her a large amount of methamphetamine ("meth").[1] He further informed her that the meth was at Rios' home.[2] Morton then called Detective Burdette Shumway ("Detective Shumway") to inform him about the conversation because she was a confidential

---

[1] Trial Tr., Vol. II, 249:4–10; 250:11–12 (Docket No. 131). The trial-transcript docket numbers throughout this decision refer to the docket in the original case (2:05-cr-691).

[2] *Id.* at 251:1–2.

informant.[3] Detective Shumway and Morton planned that Morton would go to Rios' home and see if there actually was meth there.[4] Prior to Morton going to Rios' home, no arrangements were made for Morton to do a controlled buy at Rios' home.

When Morton arrived at Rios' home, Blanca introduced her to Rios for the first time.[5] Morton then went into the bedroom of the apartment with Blanca, Rios, and three other men.[6] While in the bedroom, Rios pulled out seven, individually-wrapped ounces of meth from the bathroom vanity area.[7] Rios told her that he had "cooked" the meth himself and could supply her with any amount she needed.[8] Morton tested the meth by smoking it with a few of the other men there.[9] She could not recall whether Rios smoked it as well.[10] Morton then purchased an ounce of the meth from Rios with her own money,[11] even though her contract as a confidential informant precluded non-controlled buys. Subsequently, she watched as Rios placed the remaining six packages of meth in

---

[3] *See id.* at 248:21–23; 250:14.

[4] Trial Tr., Vol. I, 33:23–34:2 (Docket No. 130); Trial Tr., Vol. II, 250:16–21 (Docket No. 131).

[5] Trial Tr., Vol. II, 253:11–16 (Docket No. 131).

[6] *Id.* at 253:20–21; 254:1–12.

[7] *Id.* at 254:16–24.

[8] *Id.* at 257:9–16.

[9] *Id.* at 255:7–10.

[10] *Id.* at 255:12–13.

[11] Trial Tr., Vol. III, 267:15–17, 267:23–25, 268:16–18 (Docket No. 132).

a teddy bear that had a Velcro back.[12] At that point, the men tried to get Morton to take the teddy bear with her, but she refused by saying she did not have money with her to buy the other six ounces.[13]

Morton then left the apartment and met with Detective Shumway. They worked out a place for the "buy" to occur, and Morton called Blanca to tell him where to meet.[14] A short time later, Rios and Blanca drove through the specified parking lot, but they left before any contact was made. An officer saw their vehicle, however, and followed it. He watched as it swerved twice before coming to a stop in front of a store.[15] Rios was identified as the driver of the vehicle.[16] Ultimately, Rios' vehicle was searched, but no drugs were found.

The officer then decided to retrace his steps along the route he took when following Rios' vehicle.[17] As he did so, he located a teddy bear on a parking strip where he saw Rios' vehicle swerve.[18] The teddy bear had a Velcro back, and the officer found meth inside of it.[19] The teddy bear was then brought back to the scene where Rios' vehicle was searched.[20] Upon Rios seeing the

---

[12] Trial Tr., Vol. II, 256:23–257:8 (Docket No. 131).

[13] *Id.* at 258:16–21.

[14] Trial Tr., Vol. III, 274:5–18 (Docket No. 132).

[15] Trial Tr., Vol. II, 173:9–16, 174:9–13, 175:17–20 (Docket No. 131).

[16] *Id.* at 177:10–12.

[17] *Id.* at 180:13–15.

[18] *Id.* at 180:17–181:2.

[19] *Id.* at 181:22–25.

[20] Trial Tr., Vol. I, 57:21–25 (Docket No. 130).

teddy bear, he spontaneously stated, "I didn't throw that out. I didn't know what was in it."[21]
Another officer later processed the meth and determined about six ounces were present in the teddy bear.[22] Additionally, officers found digital scales and baggies in a closet across from the bathroom in Rios' home when they obtained consent to search it.[23] Based on this and other information, a jury found Rios guilty of possession with an intent to distribute meth.

## ANALYSIS

**I. STANDARD OF REVIEW**

Rios is proceeding *pro se*. As a result, the court must construe his pleadings liberally.[24] Nevertheless, Rios has the burden to allege "sufficient facts on which a recognized legal claim could be based," and it is not proper for the "court to assume the role of advocate for the pro se litigant."[25] As with any civil action, "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."[26]

**II. INEFFECTIVE ASSISTANCE OF COUNSEL**

    **A. Presumption Regarding Counsel's Performance**

Rios asserts his counsel was ineffective for several reasons. To prevail on his claim, he must

---

[21] *Id.* at 58:14–17.

[22] Trial Tr., Vol. II, 221:22–25 (Docket No. 131).

[23] *Id.* at 216:18–25, 217:4–18.

[24] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted).

[25] *Id.*

[26] *Id.* (citations omitted).

show that his attorney "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."[27] Notably, "a strong presumption [exists] that counsel's conduct falls within the wide range of reasonable professional assistance," and that counsel's actions constituted "sound trial strategy.'"[28] Rios must overcome this presumption. Moreover, Rios "must show that the deficient performance prejudiced [his] defense."[29] In other words, Rios "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[30]

### B. One-Ounce Purchase

Rios contends that his counsel's trial strategy effectively deprived him of counsel. A couple of days before trial, the government disclosed for the first time that Morton had purchased an ounce of meth at Rios' apartment. The government referred to the purchase in its opening statement to the jury, even though Rios was not charged with that crime. Rios' counsel objected and the court ruled that the government was precluded from presenting that evidence.[31] The court did leave the option open to defense counsel, however, to use evidence to discredit Morton and the police officers.[32]

---

[27] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[28] *Id.* at 689 (quotations and citation omitted).

[29] *Id.* at 687.

[30] *Id.* at 694.

[31] Trial Tr., Vol. I, 74:23 (Docket No. 130).

[32] *See id.* at 77:3–22.

Ultimately, both of the defendants' counsel did use the evidence in an effort to discredit witnesses. Because defense counsel opened the door to that evidence, the government was then allowed to use it during its examination of the witnesses. Rios contends this use of the evidence prejudiced the outcome. The court disagrees.

It was sound trial strategy to attempt to discredit Morton for purchasing and using drugs during this event and for the officers not to have followed protocol. Ample evidence was presented, however, to connect Rios to the six ounces of meth that were found in the teddy bear. Thus, even if the one-ounce meth purchase had been excluded, or if the case had proceeded as a bench trial, it is not reasonably probable the outcome would have been altered.

### C. Telephone Records

Rios further contends his counsel was ineffective because he failed to do a proper investigation of telephone records to show that Rios had no telephone communications with Morton. At no time, however, did Morton testify that she had telephone communications with Rios. Rather, she testified she had telephone communications with Blanca. It therefore was not necessary to investigate the telephone records. Moreover, even if telephone records had been procured, it is not reasonably probably they would have altered the outcome of trial.

### D. Other Allegations

#### i. Allegations in Rios' Statement of Claim and Opening Brief

Rios also asserts his counsel failed to fully advise him, failed to move to suppress evidence and dismiss the indictment, failed to present the strongest issues on appeal, and failed in his duty due to a conflict of interest. He contends these items, both alone and cumulatively, prejudiced his case.

He further asserts his conviction and sentence have resulted in violations of his free speech, the right to petition, unreasonable search and seizure, due process, right to counsel, and right to be free of cruel and unusual punishment.[33] Nowhere, however, does Rios support these allegations with facts. Rather, he makes conclusory assertions and then moves for discovery so evidence may be developed to support the allegations. As stated above, conclusory allegations that lack factual support fail to state a claim on which relief may be granted. Because Rios has failed to support these allegations with sufficient facts, they cannot be the basis for relief or to entitle him to discovery.

        ii.        <u>Allegations in Rios' Reply Brief</u>

Finally, Rios asserts in his reply brief that his counsel was ineffective because he did not move to sever Rios' case from Blanca. Unlike Rios, Blanca was friends with Morton and had telephone communications with her. Additionally, Blanca's counsel was the one who first cross-examined a witness regarding the one-ounce transaction. Thus, Blanca's trial strategy was different than Rios'. Rios therefore contends his trial should have been severed from Blanca, and it was objectively unreasonable for his counsel not to move to do so.

Because this argument was raised for the first time in Rios' reply brief, the argument is waived.[34] Even if the court were to consider Rios' argument, however, the court concludes these facts would not have altered the outcome at trial. While Blanca was friends with Morton and had telephone communications with her, the trial testimony also showed (1) Blanca introduced Morton

---

[33] Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, 6 (Docket No. 1) (capitalization omitted).

[34] *See Westport Ins. v. Ray Quinney & Nebeker*, No. 2:07-cv-236, 2009 U.S. Dist. LEXIS 69203, at *42 n.8 (D. Utah Aug. 7, 2009) (citing DUCivR 7-1(b)(3)(B), which states a reply brief "must be limited to rebuttal of matters raised in the memorandum opposing the motion").

to Rios, (2) Rios asserted he cooked the meth, (3) Rios placed six ounces of meth in a teddy bear, (4) that teddy bear was found on a parking strip in the same location where Rios swerved his vehicle when he was being followed by a police officer, (5) Rios' spontaneous statement indicated guilt, and (6) drug paraphernalia was located in Rios' home in the same general location where Morton testified the drug transaction occurred. This evidence was more than sufficient to convict Rios of possession with intent to distribute. Consequently, even if Rios' case had been severed from Blanca and the one-ounce transaction had been excluded, it is not reasonably probable that the verdict would have been different.

## **CONCLUSION**

For the reasons set forth above, Rios' Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 is DENIED, and this case is now closed.

SO ORDERED this 9th day of March, 2010.

BY THE COURT:

_____
Clark Waddoups
United States District Judge